**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MAURICE ASSADOURIAN, | |
| Plaintiff, | |
| | Hon. Garrett E. Brown, Jr. |
| v. | |
| | Civil Action No. 06-896 (GEB) |
| YOUSSEF HARB a/k/a JOSEPH HARB d/b/a PLANET OF PERFORMERS, INC., AMRO DIAB, ASHRAF FOUAD (deceased), ASHRAF FOUAD DECEDENT ESTATE, and JOHN DOES (1 TO 25), | **MEMORANDUM OPINION** |
| Defendants. | |
| YOUSSEF HARB and PLANET OF PERFORMERS, INC., | |
| Third Party Plaintiffs, | |
| v. | |
| SUPERIOR MEGA STARS PRODUCTION, INC., | |
| Third Party Defendant. | |

**BROWN, Chief Judge:**

This matter comes before the Court on the motion for summary judgment (Doc. No. 131) filed by Defendants Youssef Harb, Planet of Performers, Inc., and Amro Diab ("Moving Defendants").[1]  For the following reasons, the Court will grant Moving Defendants' summary judgment motion.

---

[1] By order of March 15, 2010, this matter was reassigned to the undersigned.

I.  **BACKGROUND**

By Opinion and Order of June 21, 2010, this Court granted summary judgment in favor of Moving Defendants on Plaintiff's claims for breach of contract and tortious interference with existing contract. *Assadourian v. Harb*, Civ. No. 06-896, 2010 WL 2560495, at *4–5 (D.N.J. June 21, 2010). The Court also recognized that two claims against Moving Defendants remained from Plaintiff's Third Amended Complaint, civil conspiracy and unlawful business practices, and that claims appeared to remain pending against Defendant Ashraf Fouad and his estate. *Id.* at *5 & n.3. Moving Defendants now seek summary judgment on Plaintiff's civil conspiracy and unlawful business practices claims. For purposes of resolving this motion, the Court draws all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

As this Court explained in the June 21 Opinion, Plaintiff Maurice Assadourian, a resident of New Jersey, promoted two small shows for defendant Amro Diab, an Egyptian musician, in 1994 and 1996 before Diab attained his current level of popularity. (Hegarty Cert. Ex. A (Pl.'s Dep.) at 83.) In 1997, Plaintiff again tried to contract with Diab, but it appears that Plaintiff backed out of the verbal agreement. (*Id.* at 115.) In 2003, Plaintiff formed Superior Mega Stars Production, Inc. ("Superior"), an entertainment promotion business. While Superior was in business, Plaintiff contacted various Middle Eastern artists with the intent to sign them to perform in the United States and Canada. (*Id.* at 73.) When signing artists, Plaintiff would negotiate and settle the price, travel arrangements, and accommodations. (*Id.* at 73–74.)

By 2004, Diab was becoming more popular in the United States, and an estimated twenty to thirty promoters were interested in signing with him. (*Id.* at 129, 223.) In 2004, Plaintiff reached out to Diab's now-deceased agent, Fouad, an Egyptian citizen, offering to promote Diab.

(*Id.* at 142, 146.) Nothing came of this original offer, but in April 2005 Plaintiff renewed discussion with Fouad about his offer to promote Diab in the United States and Canada. (*Id.* at 162.) During these discussions, Plaintiff and Fouad never reached an agreement as to the specific dates or specific venue locations of the performances, nor did they reach an agreement on the amount of up-front money to be paid to Diab. (*Id.* at 166–68.) Documents regarding arrangements for the shows, including a statement of Diab's personal requests and passport materials, were never exchanged. (*Id.* at 171–72, 183.) In September 2005, Diab signed an agreement with Defendant Youssef Harb, a Canadian citizen that Plaintiff claims operates several shell corporations, including Defendant Planet of Performers, Inc. ("Planet"), to promote concerts in the United States. (Haroutunian Decl. Ex. 1 (Harb Dep.) at 64.) Planet was incorporated in California, but according to Plaintiff's Third Amended Complaint, its incorporation status has been revoked.

The remaining claims of Plaintiff's Third Amended Complaint allege that Harb entered into his contract with Diab under a false name and deposited proceeds from this contract in Canadian accounts "in violation of State and Federal Laws" (Unlawful Business Practices) and that Harb "had a common plan and design as part of his agreement with Defendant Diab to injure plaintiff in his business by committing the tort of interference" (Civil Conspiracy). (Third Am. Compl. ¶¶ 26, 30–32.)

II. DISCUSSION

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Hersh v. Allen Prod. Co.*, 789 F.2d 230, 232 (3d Cir. 1986). The threshold inquiry is whether there are "any genuine factual

issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (noting that no triable issue exists unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in its favor). In deciding whether triable issues of fact exist, this Court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party. *Matsushita*, 475 U.S. at 587; *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995). The opposing party "may not rely merely on allegations or denials in its own pleading; rather, its response must — by affidavits or as otherwise provided in this rule — set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party." Fed. R. Civ. P. 56(e)(2).

This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. The parties do not dispute that this Court should apply New Jersey law as the law of the forum state. Accordingly, this Court will apply New Jersey law to Plaintiff's breach of contract and tortious interference with contract claims. *See, e.g.*, *Am. Cyanamid v. Fermenta Animal Health Co.*, 54 F.3d 177, 180 (3d Cir. 1995).

    A.    <u>Unlawful Business Practices and Tortious Interference</u>

Moving Defendants contend that Plaintiff's unlawful business practices claim fails to state a cognizable claim under New Jersey law, and furthermore that Plaintiff has not alleged that his injury—the failure to obtain a contract with Diab—was caused by Moving Defendants' alleged wrongful acts. (Defs.' Br. at 4–5.) Plaintiff responds that his unlawful business practices claim should be construed as a claim against Harb for tortious interference with prospective economic advantage under the liberal pleading standards of the Federal Rules of Civil Procedure. (Pl.'s Br. at 5–6.) While this portion of Moving Defendants' motion more closely resembles a

4

motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court finds that the matter is properly addressed for summary judgment, because discovery closed more than two years ago on October 16, 2008, Plaintiff has had the opportunity to file three amended complaints, and Plaintiff relies upon testimonial evidence to oppose Moving Defendants' motion. Plaintiff has had every opportunity to present his claims against Moving Defendants during the more than four years of this litigation. *See Assadourian*, 2010 WL 2560495, at *2 (discussing Plaintiff's numerous amendments to complaint); Assadourian v. Harb, Civ. No. 06-896, 2009 WL 2424704, at *2 (D.N.J. Aug. 6, 2009) (Report & Recommendation) (denying Plaintiff's post-discovery request to voluntarily dismiss the Third Amended Complaint without prejudice, noting "Plaintiff's lack of diligence in waiting until the eleventh hour to seek voluntary dismissal").

Assuming *arguendo* that Plaintiff's unlawful business activities claim can be construed as a claim for tortious interference with prospective economic advantage, in order to survive summary judgment, Plaintiff must present evidence of the following: "(1) the plaintiff had a prospective economic or contractual relationship; (2) the defendant maliciously interfered with that relationship; (3) the interference caused the loss of the prospective economic gain; and (4) the plaintiff was damaged as a result." *Interstate Realty Co., L.L.C. v. Sears, Roebuck & Co.*, Civ. No. 06-5997, 2009 WL 1286209, at *8 (D.N.J. Apr. 27, 2009) (citing *MacDougall v. Weichert*, 144 N.J. 380, 404 (1996); *Printing Mart-Morristown v. Sharp Elec. Corp.*, 116 N.J. 739, 751–52 (1989)). Moving Defendants argue that Plaintiff has not shown causation. (*See* Defs.' Br. at 4–5.) This Court agrees.

Plaintiff argues that Harb "maliciously interfered" with his business relationship with Diab "by resorting to unlawful and illegal business practices." (Pl.'s Br. at 8.) Specifically,

Plaintiff argues that Harb "was providing false information to the I.N.S. in order to gain an unlawful economic advantage," that he "admitted making cash payments to the artists, tax free," and that he admitted he had never filed an income tax return in the United States. (*Id.*) The problem with this argument, however, is that Plaintiff fails to demonstrate how these allegations relate to his attempt to form a contract with Diab in or about 2005.

With regard to the claim that Harb was providing false information to the INS, the deposition testimony and exhibit relied on by Plaintiff demonstrate that the Harb and his legal counsel were under investigation by the New Jersey Division of Gaming Enforcement in 2001 for "us[ing]" fraudulent information "to evade U.S. and N.J. tax laws, employment laws, and for the purposes of smuggling people into the United States." (Haroutunian Decl. Ex. 2; *see also* Harb Dep. at 36–39, 98–99.) Plaintiff presents no evidence indicating that this investigation resulted in a finding of unlawful practices, but more importantly, Plaintiff does not explain how Harb's alleged misconduct in 2001 interfered with his ability to contract with Diab in 2005. As for the claim that Harb admitted making tax-free payments to artists, this statement mischaracterizes[2] the portion of Harb's deposition testimony on which Plaintiff relies, but in any event is irrelevant to Plaintiff's claims. Plaintiff's unsubstantiated assertion that Harb made tax-free payments to *some artists* has no bearing on whether Harb maliciously interfered with

---

[2]At the page cited by Plaintiff, after admitting that some artists and their musicians were paid in cash, Harb testified, in response to the question of whether he reported cash payments to artists for tax purposes, "I don't do the accounting stuff. So of course, I assume, yes." (Harb Dep. at 53:10–22.) After indicating that he did not report the cash payments he made to artists, he clarified that "[e]verything is reported to the company. I mean, if I'm working for Maroun, yes, he knows what I'm taking, what I'm paying. The same thing for Planet." (*Id.* at 56:5–8.) While this testimony may reasonably support the conclusion that Harb was unaware of tax reporting requirements and that tax violations *may* have occurred, Plaintiff has not presented evidence that Harb and his companies actually did violate tax laws.

Plaintiff's opportunity to contract with Diab, which is the basis of Plaintiff's complaint.[3]

Plaintiff has not presented any evidence in opposition to the present motion indicating that Harb offered improper payments to Diab that prevented Diab from contracting with Plaintiff. Finally, with regard to Harb's testimony that he had not filed a U.S. tax return (*see* Harb Dep. at 46 (explaining that he was told by his accountant that he did not need to file a U.S. tax return, but that he needed to file a Canadian tax return)), Plaintiff neither presents evidence that Harb was required to file a U.S. tax return, nor does he explain how this fact demonstrates malicious interference with his opportunity to contract with Diab.[4] Indeed, Plaintiff does not provide evidence that Harb even knew of Plaintiff's attempts to contract with Diab. Ultimately, Plaintiff presents nothing but speculation that Harb engaged in unlawful conduct, and that this conduct prevented Plaintiff from forming a contract with Diab.

---

[3] In defending his newly-minted tortious interference claim, Plaintiff appears to attempt to expand the scope of the alleged injury from the inability to contract with Diab to the inability to contract with various unidentified artists. (*See* Pl.'s Br. at 10 ("It is undisputed that Harb gained a competitive advantage over Plaintiff by unlawfully inducing third parties to contract with him.").) Indeed, in Plaintiff's "Counter Statement of Facts and Background," Plaintiff alleges that Harb admitted he filed a fraudulent INS Form I-129 to petition for a performer and her band to come to the United States. (Pl.'s Br. at 3.) The Court notes that, based on the deposition testimony cited by Plaintiff, the allegedly fraudulent INS form related to another performing artist, and it would have been filed in 2000 or 2001. (*See* Harb Dep. at 98–99.) In any event, the Third Amended Complaint makes clear that Plaintiff's claims arise from Harb's interference with his attempt to contract with Diab in or about 2005; all claims related to Plaintiff's attempt to contract with Diab, and no other artists are mentioned. (Third Am. Compl. ¶¶ 1, 12–35.) Thus, to the extent that Plaintiff attempts to save his tortious interference claim with vague allegations that Harb interfered with opportunities to contract with other artists, Plaintiff's attempt to amend his pleadings for the fourth time, after four years of litigation, is improper.

[4] In Plaintiff's "Counter Statement of Facts and Background," Plaintiff also alleges without support that Harb "was unable to confirm his compliance with the **Currency and Foreign Transaction Reporting Act** whereby any cash transactions in excess of $10,000 must be reported to the Internal Revenue Service." (Pl.'s Br. at 2–3.) Such unsupported speculation does not withstand scrutiny at the summary judgment stage, but even if the Court presumed this allegation to be true, Plaintiff does not explain how it relates to Plaintiff's attempt to contract with Diab.

Because Plaintiff has not presented evidence linking Harb's alleged use of improper or unlawful means to his inability to contract with Diab, Plaintiff may not sustain a claim for tortious interference with prospective economic advantage against Harb, and this Court will grant summary judgment in favor of Moving Defendants on Plaintiff's unlawful business practices claim.

B.   Conspiracy

The absence of underlying tort liability against either Harb or Diab precludes a finding of civil conspiracy against them under New Jersey law. *See, e.g.*, *Brown ex rel. Estate of Brown v. Philip Morris Inc.*, 228 F. Supp. 2d 506, 517 n.10 (D.N.J. 2002), *Eli Lilly and Co. v. Roussel Corp.*, 23 F. Supp. 2d 460, 497 (D.N.J. 1998).  However, even if Plaintiff had established that Harb had engaged in tortious conduct, Plaintiff fails to present any evidence that Diab or any other Defendant agreed to participate in this conduct.  Plaintiff makes much of the fact that Diab "negotiated a promotion agreement with Plaintiff, which he suddenly abandoned without explanation or justification to Plaintiff," (Pl.'s Br. at 10–11), but this fact does not support Plaintiff's desired conclusion—i.e., that Diab "acted in concert with Harb to execute their promotion agreement dated September 6, 2005 by unlawful means" (*id.* at 11).  Plaintiff baldly alleges that "Harb offered Diab cash payment to evade U.S. taxes and Diab accepted such offer" (*id.*), but Plaintiff provides no evidence to support this contention.  Such unsubstantiated speculation does not establish a genuine issue of fact.  Accordingly, the Court will grant Moving Defendants' motion for summary judgment on Plaintiff's civil conspiracy claim.

C.   Remaining Claims

By virtue of this Court's ruling, none of Plaintiff's claims against Moving Defendants remain pending.  As before, Defendant Fouad and his estate have not joined the motion for

8

summary judgment. His absence appears to be an administrative oversight, because he is represented by the same counsel as Moving Defendants, and the docket entries for Moving Defendants' motions for summary judgment indicate that he would be joining the motion. However, the Court has now ruled against Plaintiff on the two claims naming Fouad as a Defendant: breach of contract and civil conspiracy. Furthermore, the Court has rejected the tort basis for Plaintiff's conspiracy claim: tortious interference with prospective economic advantage. Because Plaintiff has not presented evidence establishing that there was a contract with Diab or that Harb tortiously interfered with his opportunity to contract, he may not pursue a claim against Fouad for breach of contract or conspiracy to interfere with his prospective contract. Further, because Plaintiff does not advance any independent claims against Fouad, this Court will dismiss all of Plaintiff's claims against him. Thus, only the counterclaims presented by Defendants Harb and Planet appear to remain pending. All other parties and claims have been dismissed.

### III.    CONCLUSION

For the foregoing reasons, this Court will grant Moving Defendants' motion for summary judgment. (Doc. No. 131.) Nothing remains of Plaintiff's Third Amended Complaint. An appropriate form of order accompanies this Memorandum Opinion.

Dated: November 1, 2010

                                              S/ Garrett E. Brown, Jr.
                                    Garrett E. Brown, Jr., Chief Judge
                                    United States District Court